[739 NYS2d 2]

IRINA M. MEGRELISHVILI et al., Respondents-Appellants, v OUR
LADY OF MERCY MEDICAL CENTER, Appellant-Respondent.

First Department, February 19, 2002

## APPEARANCES OF COUNSEL

*Henry Schwartz,* New York City, for respondents-appellants.

*Edward J. Guardaro, Jr.,* of counsel, White Plains (*Bartlett, McDonough, Bastone & Monaghan, LLP,* attorneys), for appellant-respondent.

## OPINION OF THE COURT

SULLIVAN, J.

Plaintiffs Irina Mitauer Megrelishvili (plaintiff) and her husband, who asserts a derivative claim for loss of services, seek to recover damages for personal injuries sustained by plaintiff as a result of surgery performed on her on July 21, 1993 by Manuel F. Chiuten, M.D. The case against defendant, Our Lady of Mercy Medical Center (OLM), where Dr. Chiuten was a private attending physician and where the surgery was performed, is based on its negligence in allowing Dr. Chiuten to maintain privileges at OLM despite the fact that, in viola-

tion of the hospital's bylaws, he had failed to obtain malpractice insurance for approximately three years prior to the surgery.

OLM appeals from an order which, inter alia, denied its cross motion to dismiss the complaint for failure to state a cause of action. Plaintiffs cross-appeal from that aspect of the same order which granted plaintiffs a deposition of OLM by a witness with knowledge of whether Dr. Chiuten was licensed for the subject period and whether he was an employee of OLM and which further granted OLM's cross motion for a protective order vacating plaintiffs' demands for quality assurance materials and prohibiting the deposition of one of its employees, Patricia Hajnosz, Esq.

On July 14, 1993, the then-23-year-old plaintiff, with complaints of back and shoulder pain, had an initial consultation with Dr. Chiuten, an attending physician at OLM, in his private office. On July 21, 1993, Dr. Chiuten performed a surgical procedure for bilateral breast reduction on her at OLM. The procedure, in which seven pounds of tissue were removed from each breast, entailed a free nipple graft. On July 23, 1993, on Dr. Chiuten's authorization, OLM discharged plaintiff, despite her continuing complaints of pain. The following day, due to compromised circulation and ischemia of the nipple grafts, Dr. Chiuten performed bilateral nipple areolar revision surgery on plaintiff in his private office. Plaintiff suffered further complications and continued to see Dr. Chiuten for eight months for follow-up care. During this period, he recommended further revision due to irregular pigmentation, fibrosis, scarring and lack of nipple projection. Plaintiff did not return for this procedure; her final visit with Dr. Chiuten was on March 4, 1994.

On or about June 15, 1994, plaintiff commenced an action for medical malpractice against Dr. Chiuten, who, in his deposition in that action on March 22, 1995, testified that he started his private practice in general plastic surgery in 1982, at which time he was affiliated with Union Hospital and Bronx-Lebanon Hospital. The following year he established affiliations with St. Barnabas Hospital, OLM, Pelham Bay General Hospital and Dobbs Ferry Hospital. Dr. Chiuten admitted that his failure to have insurance was related to the termination of his privileges at St. Barnabas and Union Hospitals, but stated that his failure to have insurance had nothing to do with the discontinuance of his affiliation with Bronx-Lebanon; with respect to that hospital, he terminated his affiliation at his wife's request. At

the time plaintiff underwent surgery, Dr. Chiuten was affiliated only with OLM.

Dr. Chiuten testified that he had not been covered by malpractice insurance since 1990. He stated that to maintain privileges at OLM he was required to submit a yearly application form which included a statement as to the status of his malpractice insurance, but that he did not submit an application for the years 1992 and 1993. Thus, OLM "did not find out" about his lapse in coverage. Dr. Chiuten voluntarily terminated his affiliation with OLM in 1994 "[b]ecause [he] did not have malpractice insurance."

OLM's bylaws contain numerous references to the requirement that physicians applying for appointment and reappointment to the medical staff maintain malpractice insurance and submit verification of coverage. With respect to the reappointment process, such verification must be submitted at least 30 days prior to the expiration of the current staff appointment. Failure to submit the required information "shall be deemed to constitute [the physician's] resignation from the [staff], effective at the expiration of [the physician's] current appointment."

On or about September 19, 1995, plaintiffs commenced this action against OLM, alleging causes of action for negligence, lack of informed consent and loss of consortium. According to plaintiffs, OLM was negligent in failing to abide by appropriate procedures with respect to the renewal of Dr. Chiuten's medical staff privileges, thus allowing an unqualified physician to maintain such privileges and operate on plaintiff. In their bill of particulars, plaintiffs state, inter alia, that OLM was negligent in failing to suspend Dr. Chiuten's medical privileges despite his lack of compliance with a requirement in OLM's bylaws that staff members carry professional liability insurance.

On October 30, 1997, OLM had produced for deposition M. Martha Lauro, who, at the time, held the position of Director of Medical Education and Medical Staff Services and, inter alia, supervised the application and reapplication of privileges for staff members. While she was employed by OLM in July of 1993, at the time of plaintiff's surgery, these were not among her responsibilities. According to Ms. Lauro, Ms. Mijnos [sic, Patricia Hajnosz], OLM's vice-president and legal counsel, might have knowledge as to the requirements in 1993 with respect to the submission of documentation, including malpractice insurance certificates, in the case of a physician reapplying for privileges at OLM. Ms. Lauro testified that in June of 1993,

OLM wrote to Dr. Chiuten regarding his failure to submit a reappointment application, advising him that "if he did not submit [one] within the next ten days, it would be deemed a resignation from the medical center."

On July 27, 1998, Dr. Chiuten filed for personal bankruptcy and, on December 23, 1998, the United States Bankruptcy Court for the Southern District of New York discharged him of over $850,000 in debt, including plaintiffs' unsecured nonpriority claim.[1]

By notice of motion dated October 7, 1999, plaintiffs moved for an order compelling OLM to produce a witness "with knowledge of the facts and circumstances concerning Dr. Ch[iu]ten's staff appointments" and the termination of such appointments between 1990 and 1993. Plaintiffs noted that while Dr. Chiuten had admitted that he was in violation of hospital bylaws for more than three years before he operated on plaintiff and that he ignored OLM's requirement for yearly submission of proof for reapplication, OLM nevertheless denied what Dr. Chiuten admitted, and the deposed hospital witness sought to make it appear as if his first violation of hospital policy occurred on December 1, 1992, the date his application for reappointment for the year 1993 would have been due.

OLM cross-moved to dismiss the complaint for failure to state a cause of action or, in the alternative, for a protective order, pursuant to CPLR 3103, vacating plaintiffs' demands for all quality assurance materials and prohibiting the deposition of its vice-president and legal counsel, Patricia Hajnosz, Esq. OLM argued that the quality assurance materials sought by plaintiffs were exempt from disclosure under Education Law § 6527 (3) and submitted an affidavit from Hajnosz, which stated that she could offer no relevant testimony since she had no "operational responsibility" for, nor any authority, supervisory or otherwise, over, the Department of the Medical Staff Coordinator in July of 1993 or at any time prior thereto. Nor did she have "[any] personal knowledge whatsoever in July of 1993 or anytime prior thereto as to whether Dr. Chiuten had ever submitted an application for privileges at [OLM] or whether or not he had medical malpractice insurance at that time." Conspicuously absent from her affidavit, however, was a statement as to whether or not she was aware, in 1993, of the

---

1. In addition to plaintiffs' claim, characterized as a "lawsuit," the Schedule of Creditors Holding Unsecured Nonpriority Claims reflects another "lawsuit" and two "malpractice lawsuits" against Dr. Chiuten.

consequences of a physician's failure to submit a certificate of insurance.

The motion court granted plaintiffs' motion to the extent of directing OLM to produce a witness to be deposed as to its knowledge of whether Dr. Chiuten was "licensed" for the subject period and, if still an issue for plaintiffs, whether he was an employee. Concluding that plaintiffs had not demonstrated that they were entitled to the quality assurance file, the motion court granted that part of the cross motion seeking a protective order as to that file. In addition, the court denied OLM's motion for dismissal of the complaint pursuant to CPLR 3211 (a) (7), denominated a motion for "summary judgment," finding, in a subsequently amended order, issues of fact, "including but not limited to whether defendant knowingly permitted Dr. Ch[iu]ten, while not licensed, to use its facilities while treating plaintiff."

■ OLM's cross motion for dismissal of the complaint was properly denied. At the outset, we note that the doctrine of respondeat superior has no application to this case, since Dr. Chiuten was an independent physician retained by plaintiff, not an employee of OLM (*see, Fiorentino v Wenger*, 19 NY2d 407, 414; *Bush v Dolan*, 149 AD2d 799), and plaintiffs do not base their claim either on OLM's direct participation in or supervision over the medical care plaintiff received. Rather, plaintiffs' allegations center on OLM's failure to monitor Dr. Chiuten's maintenance of malpractice insurance.

The allegation that OLM was negligent in its failure to restrict Dr. Chiuten's staff privileges since he no longer was covered by such insurance is sufficient to state a cause of action against OLM.[2] "While a hospital is not responsible for the actual treatment of a patient by a private physician with staff privileges, the failure of a hospital to develop and adhere to reasonable procedures for reviewing a physician's qualifications creates a foreseeable risk of harm thus establishing an independent duty to such patients." (*Raschel v Rish*, 110 AD2d 1067, 1068, *appeal dismissed* 65 NY2d 923; *see, Logue v Velez*, 92 NY2d 13, 19.) Here, while the doctor's lack of coverage did not, in itself, cause the alleged physical injuries, had OLM followed its own procedures in seeing that he met its affiliation requirements, the fact that he was unable to obtain coverage would have put OLM on notice that he had lost his privileges

---

2. Of course, ultimately, OLM could not be held liable absent a showing of liability on the part of Dr. Chiuten.

at other hospitals and, as the facts, when developed, are likely to show, that he had a history of malpractice claims against him, thus placing those patients of his using OLM's facilities at risk. (*Cf.*, *Fiorentino v Wenger*, *supra*, 19 NY2d at 415.)

To the extent the parties have litigated OLM's dismissal motion as one for summary judgment, whether OLM was negligent in failing to restrict Dr. Chiuten's privileges presents a question of fact which precludes the grant of such relief in OLM's favor. (*See*, *Raschel v Rish*, *supra*, 110 AD2d at 1068.) We reject OLM's argument that as a matter of law, the second surgical procedure was the pivotal medical treatment and that since it was provided outside the hospital in Dr. Chiuten's private office, it had nothing to do with OLM. It may well be that the second procedure would have been unnecessary had the first one been properly performed. This presents a question of fact for resolution at trial.

■ As noted, the court granted plaintiffs' motion to compel OLM to produce a witness with relevant records concerning the facts and circumstances concerning Dr. Chiuten's staff appointments and the termination of such appointments between 1990 and 1993 only to the extent of directing OLM to provide a witness to be deposed as to its knowledge of whether Dr. Chiuten was licensed for the subject period and, if still an issue for plaintiffs, whether Dr. Chiuten was OLM's employee. This direction was in error, since there is no issue as to Dr. Chiuten's licensure or employment status at the time of the alleged malpractice. (*Cf.*, *Fiorentino v Wenger*, *supra*, 19 NY2d 407.) There are, however, significant issues as to the adequacy of OLM's review, prior to Dr. Chiuten's appointment, of his credentials, as to when he was last certified for staff privileges, as to whether there was an inquiry at that time into the status of his malpractice insurance and, if so, the outcome of that inquiry, and as to whether there were any procedures for denying recertification to physicians who were not in compliance with the requirement that physicians with staff privileges carry malpractice insurance.

OLM argues that plaintiffs' request to depose Patricia Hajnosz, Esq. was intended as a harassment device and that the information sought could have been obtained from other sources. Ms. Hajnosz, however, was the only person currently employed who was identified by OLM as someone who might have knowledge of credentialing procedures in effect in 1993. While she denies having "personal knowledge * * * in July of 1993 or anytime prior thereto" as to whether Dr. Chiuten had

ever submitted an application for hospital privileges or whether he had malpractice insurance at that time, she does not deny having knowledge of these circumstances at the present time. Nor does she deny having knowledge as to OLM's procedures in 1993 regarding recertification. We modify to grant plaintiff a deposition of Ms. Hajnosz as to the circumstances, as noted, relating to OLM's last recertification of Dr. Chiuten prior to 1993 and OLM's procedure with respect to the denial of recertification for physicians no longer covered by malpractice insurance.

The court properly granted OLM's motion for a protective order shielding its quality assurance materials from disclosure. Education Law § 6527 (3) exempts from disclosure "records relating to performance of a medical or a quality assurance review function." Similarly, Public Health Law § 2805-m confers complete confidentiality on information gathered by a hospital in accordance with Public Health Law §§ 2805-j and 2805-k (1). The former section mandates that hospitals maintain malpractice prevention programs, which must include periodic review of physicians' credentials and competence (*Logue v Velez*, 92 NY2d 13, 17), and the latter requires that, prior to granting or renewing privileges, the hospital request—and the physician provide—certain relevant information. (*Id.*) "These protections against disclosure were added to the Public Health Law to 'clarify that existing protections against disclosure of materials relating to quality assurance activities apply to hospital malpractice prevention programs and incident reporting' " (*id.*, quoting Governor's Program Bill, at 7, Bill Jacket, L 1986, ch 266).

Accordingly, the order, Supreme Court, Bronx County (Kenneth Thompson, Jr., J.), entered July 20, 2000, which, as modified by an order, same court and Justice, entered on or about November 2, 2000, denied defendant Our Lady of Mercy Medical Center's cross motion to dismiss the complaint pursuant to CPLR 3211 (a) (7), granted defendant's cross motion for a protective order as to its quality assurance file relative to private attending physician Dr. Manuel Chiuten, and granted plaintiffs' motion for the deposition of a further defense witness to the extent of directing defendant to provide a witness as to whether Dr. Chiuten was licensed for the subject period and, if relevant, whether he was employed by defendant, should be modified, on the law and the facts, to the extent of striking those portions of the first order providing for the production of a witness to testify as to Dr. Chiuten's licensure and employment status, and directing instead that defendant produce Ms.

Patricia Hajnosz to give testimony as to when, prior to July 21, 1993, defendant last recertified Dr. Chiuten for staff privileges, whether that recertification included inquiry into the status of his malpractice insurance, the outcome of that inquiry, and what, if any, procedure was in place for denying recertification to physicians who were not in compliance with its bylaws requiring physicians with staff privileges to carry malpractice insurance, and, except as thus modified, affirmed, without costs or disbursements.

NARDELLI, J.P., MAZZARELLI, SAXE and RUBIN, JJ., concur.

Order, Supreme Court, Bronx County, entered July 20, 2000, as modified by an order, same court, entered on or about November 2, 2000, modified, on the law and the facts, to the extent of striking those portions of the first order providing for the production of a witness to testify as to the doctor's licensure and employment status, and directing instead that defendant produce a further witness to give testimony as to when, prior to July 21, 1993, defendant last recertified the doctor for staff privileges, whether that recertification included inquiry into the status of his malpractice insurance, the outcome of that inquiry, and what, if any, procedure was in place for denying recertification to physicians who were not in compliance with its bylaws requiring physicians with staff privileges to carry malpractice insurance, and, except as thus modified, affirmed, without costs or disbursements.